RUBY v. TYLER.

CANCELLATION OF INSTRUMENTS—DEEDS—INSANE PERSONS.
On a suit by the guardian of an incompetent person to can-
cel a deed, alleging fraud, duress, and undue influence,
that no consideration passed for said conveyance, and that
the grantor therein was incompetent physically and men-
tally, evidence reviewed and *held*, to justify a decree for
plaintiff.

Appeal from Wayne; Codd (George P.), J. Sub-
mitted January 21, 1921. (Docket No. 132.) Decided
March 30, 1921.

Bill by Elizabeth Ruby, guardian of Mary Ann
Romer, a mentally incompetent person, against Mary
Tyler to cancel a deed. From a decree for plaintiff,
defendant appeals. Affirmed.

*McIntyre & Robinson*, for plaintiff.

*John C. Alexander* and *Leopold D. Mayer*, for de-
fendant.

MOORE, J. This is a bill brought to cancel a deed.
From a decree in accordance with the prayer of the
bill the case is brought here by appeal.

We quote from the bill of complaint as follows:

"The plaintiff says:
"1. That she was duly appointed guardian of Mary
Ann Romer, a mentally incompetent person, in the pro-
bate court for the county of Wayne, State of Michigan,
on the 10th day of March, A. D. 1920, and brings this
suit in such capacity.
"2. That said defendant resides in the city of De-
troit, said county and State; that sometime on some
date in the early part of February, 1920, while said

Mary Ann Romer, mother of said defendant, was visiting at said Tyler's home and while said Mary Ann Romer was in an unsound condition both mentally and physically, the said defendant by use of undue influence, persuasion, fraud and unfair methods procured the said Mary Ann Romer to sign a warranty deed of certain property owned by the said Mary Ann Romer located in the city of Detroit, said county and State, commonly known as 457 Brewster street  *  *  * for no consideration whatsoever and wholly against the wishes, desires and intention of said Mary Ann Romer and proceeded to record such deed in the register of deeds' office for Wayne county, Michigan.

"3. That the said deed was procured by fraud, duress and undue influence and that no consideration passed for such conveyance."

Defendant answered the bill of complaint, admitting she obtained the deed, but denied any fraud or undue influence, and averred the deed was based upon a sufficient consideration, without stating what the consideration was.

The case was tried in open court. It is the claim of the appellant that plaintiff failed to make a case, and that the bill of complaint should have been dismissed, citing *Akers* v. *Mead,* 188 Mich. 277; *Hawthorne* v. *Dunn,* 210 Mich. 176, and other cases.

The testimony in the case is rather meager, perhaps growing out of the fact that the trial judge stated to counsel that he thought it would be error to put in any testimony that was also within the knowledge of Mary Ann Romer, for the reason that she had been adjudged incompetent, and he thought the testimony would be barred by the statute. He made a like ruling when Mrs. Romer was offered as a witness on the part of the plaintiff.

The plaintiff and defendant are both daughters of Mrs. Romer. She also had other children. The record shows she had been living with one of them, Mrs. Abar, until Mrs. Abar went to Chicago on Christmas

week of 1919, when she went to Mrs. Ruby's; that in response to an invitation from the defendant she went to visit her on the Sunday following Christmas day. On the 10th day of February, 1920, the deed in controversy was made, and shortly thereafter was put upon record. Mrs. Ruby testified that after the Tylers got the deed that "Mr. Tyler called up and told me to come and get her, that he could not be bothered with her." Mrs. Ruby's brother did get Mrs. Romer and brought her to Mrs. Ruby's, where she remained until after the decree was rendered. She has since died and her death has been suggested of record.

Shortly after the return of Mrs. Romer to Mrs. Ruby, Mrs. Romer was adjudged an incompetent person and this suit was instituted March 19, 1920.

Witnesses who had roomed with Mrs. Romer before she went to live with Mrs. Abar testified to acts showing her to be incompetent to do ordinary business. The notary who was called in to take the acknowledgment of the deed was a stranger to Mrs. Romer, and found a deed already prepared when he got to the house in the evening when the acknowledgment was taken, and while he expressed the opinion that Mrs. Romer understood what she was doing, he stated on the cross-examination that Mrs. Romer was so feeble that Mrs. Tyler assisted her in signing her name by guiding her hand.

We quote:

"Q. You had nothing to do with the preparing of the deed?

"A. No, nothing to do with it.

"Q. The old lady never sent for you to come, that she wanted the deed done?

"A. No, sir.

"Q. Did the old lady, when you were there that night, tell you what she wanted done?

"A. She did not.

"Q. You simply read the deed to her and that is all there was to it?

"*A.* That is all there was to it.

"*Q.* Did you see any money pass?

"*A.* No.

"*Q.* There was no money passed in your presence?

"*A.* No.

"*Q.* Did you discuss any other matter with her, with the old lady on that occasion?

"*A.* No, sir; I did not.

"*Q.* Ask her the formal question when you take an execution of a deed, that is, if she acknowledges it to be her free act and deed?

"*A.* Yes, I did.

"*Q.* And that is all you know about it?

"*A.* That is all I know about it, yes."

The witnesses to the deed were also strangers to Mrs. Romer. One of them testified Mrs. Romer, we quote:

"*A.* The old lady said that Mrs. Tyler would take care of her the rest of her life; she would give her the property. Yes, she would do it if she took care of her."

There was no provision in the deed requiring Mrs. Tyler to take care of Mrs. Romer, and no paper was ever prepared making any such provision. The deed conveyed all the property Mrs. Romer had. Its value was shown to be $5,000.

The decree should not be disturbed. See *Nolan* v. *Nolan*, 78 Mich. 17, and *Noban* v. *Shoup*, 171 Mich. 191.

The decree is affirmed, with costs to appellee.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.